UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GEORGE AGENT, and
IRA RICE,

                Petitioners,

vs.                      Case Nos.  2:02-cv-628-FtM-29DNF
                                       2:02-cv-394-FtM-29DNF
                                     2:93-cr-102-FTM-29

UNITED STATES OF AMERICA,

                Respondent.
_____

## OPINION AND ORDER

      These matters come before the Court on remand from the Eleventh Circuit Court of Appeals. (Doc. #997)[1]. Both George Agent and Ira Rice had filed Petitions Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Docs. #842, 862), and the Court had entered orders and judgments denying the § 2255 petitions. (Docs. #911, 912, 913, 915). The Court neglected, however, to address some issues raised by each petitioner, and the Eleventh Circuit has remanded each case so the Court can correct that oversight. The Eleventh Circuit has thus directed the Court "to resolve the ineffective-assistance-of-counsel claims based on failure to request a special verdict as to

_____

[1]Unless otherwise noted, the docket numbers refer to the criminal case, Case No. 2:93-cr-102.

drug type." (Doc. #997, p. 12).  As to the other issues, the Court adopts its prior Orders.

On March 28, 2005, the Court entered an Order (Doc. #998) denying both petitioners' requests to supplement their § 2255 petitions with claims under Blakley v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005) but allowing supplemental memoranda as to the limited issues on remand. Petitioners filed their Supplemental Memorandum (Doc. #1008) on May 5, 2005.  The United States filed its Response (Doc. #1009) on May 16, 2005.  On December 5, 2005 petitioners filed Supplemental Authority in Further Support of Pending Section 2255 Habeas Petition (Doc. #1016).

## I.

On July 28, 1993, George Agent (Agent) and Ira Rice (Rice) and twenty-one others were charged in a one count Indictment (Doc. #1) with conspiracy from 1989 to July, 1993, to possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of "cocaine base, crack cocaine" and a quantity of a mixture or substance containing a detectable amount of cocaine.  Thirteen defendants went to trial, and on December 10, 1993, all thirteen were convicted by a jury.   (Doc. #337).

On March 18, 1994, Agent was sentenced to life in prison, followed by five years of supervised release (Doc. #422), and Rice was sentenced to 324 months in prison, followed by five years of supervised release (Doc. #455).  Both Agent and Rice filed timely

-2-

Notices of Appeal (Docs. #424, 434).  While the appeal was pending, Agent filed a motion for modification of sentence based upon the retroactive application of Amendment 505 of the Sentencing Guidelines.  (Doc. #684).  The motion was granted, and Agent's sentence was reduced to 360 months imprisonment followed by five years supervised release.  (Doc. #689).

On August 29, 2001, the Eleventh Circuit issued its mandate for a thirty-one page non-published decision affirming Agent's and Rice's (and all other defendants') convictions and sentences. (Doc. #831; <u>United States v. Agent, et al.</u>, 273 F.3d 1118 (11th Cir. 2001)(Table)).  As relevant to the current motion, the Eleventh Circuit found that the evidence at trial supported the conclusion that the overall conspiracy lasted from 1989 to July, 1993 and involved at least fifteen kilograms of cocaine base (Doc. #831, p. 10); that multiple witnesses testified to making regular trips to Miami to purchase half-kilogram or kilogram quantities of powder cocaine, which was then brought to the Fort Myers area, converted into cocaine base, and distributed (<u>Id</u>. at 12-13); that the testimony established that well over thirty (30) kilograms of powder cocaine was obtained from Miami (<u>Id</u>. at 12-13); and that the testimony established that one quarter-kilogram of powder cocaine could produce seven to ten bags or "packs" of crack cocaine, each of which contained one hundred rocks of crack cocaine and sold for $1,000 (<u>Id</u>. at 13).  The Eleventh Circuit stated: "All of the above evidence concerning the scope of the conspiracy's activities in the

-3-

procurement of cocaine powder and distribution of cocaine base supports the district court's conservative estimate that the conspiracy, during its four-year duration, involved at least fifteen kilograms of cocaine base." (Id. at 13-14).

The Eleventh Circuit then found that the district court's determination that Agent was criminally liable for fifteen kilograms of cocaine base was supported by substantial evidence (Id. at 14-16).  The Court also found that the district court's determination that Rice was criminally liable for three kilograms of cocaine base was supported by substantial evidence, and indeed was conservative in that the full fifteen kilograms of cocaine base could have been attributed to Rice (Id. at 17-19).

The Eleventh Circuit then found that Agent and Rice had abandoned their Apprendi[2] challenges by not raising the issue until the filing of supplemental briefs (Id. at 24-25).  Further, the Court found that in any event the Apprendi challenges would fail under a plain error analysis (Id. at 25-29) because "no reasonable jury could have rationally concluded that [Agent and Rice] were guilty of the substantive offense - conspiracy to possess cocaine base and cocaine with intent to distribute - but that they were not each responsible for conspiring to distribute more than fifty grams of cocaine base. . . . we are compelled to conclude that the same evidence demonstrates that each of these three defendants was

---

[2]Apprendi v. New Jersey, 530 U.S. 466 (2000).

liable for at least fifty grams of cocaine base." (Id. at 27). The Eleventh Circuit continued: "This means that Agent . . . and Rice were each subject to the range of penalties set forth in 21 U.S.C. § 841(b)(1)(A) of ten years to life in prison. Because their prison sentences fall within this range, their substantial rights were not affected by the failure to submit the issue of drug quantity to the jury." (Id. at 27). The Eleventh Circuit further found that "the evidence of the drug quantities involved in this conspiracy was overwhelming," such that not recognizing the Apprendi error could not seriously affect the fairness, integrity, or public reputation of judicial proceedings. (Id. at 28). "Abundant testimony was presented at trial concerning large purchases of cocaine powder from Florida which was then cooked into cocaine base and distributed frequently and regularly for a period of several years. Moreover, there was substantial evidence connecting Agent, . . . and Rice to the conspiracy and to specific transactions of cocaine base and cocaine powder. In light of this evidence, even if we were to conclude that the failure to submit drug quantity to the jury somehow affected the defendants' substantial rights, we would not be compelled to exercise our discretion to notice that error with respect to Agent, . . . or Rice." (Id. at 28-29).

Agent filed a petition for a writ of certiorari in the Supreme Court, which was denied on January 14, 2002. Agent v. United States, 534 U.S. 1106 (2002).

-5-

## II.

The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). See also Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005); Wiggins v. Smith, 123 S.Ct. 2527, 2535 (2003); Williams v. Taylor, 529 U.S. 362 (2000). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). This judicial scrutiny is "highly deferential." Id. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

### III.

The issues before the Court relate to whether defense counsel were constitutionally ineffective in failing to request a special verdict as to drug type. (Doc. #997, p. 12). The Eleventh Circuit identified the following issues which were not addressed previously: (1) whether Rice was denied his Fifth and Sixth Amendment rights because the district court used a general verdict and did not instruct the jury that it had to determine type of drug beyond a reasonable doubt (Doc. #997, p. 6); (2) whether Rice's counsel was ineffective for failing to request a special verdict about the type of drug (Id.); (3) whether Rice's counsel was ineffective for failing to object to Rice's sentence based on the jury's general verdict (Id.); (4) whether Agent's counsel was ineffective for failing to object to the general verdict, which caused him to be sentence to a drug type not included in the indictment or proven to a jury beyond a reasonable doubt (Doc. #997, p. 7). The Court first reviews the legal principles applicable while the case was pending, then discusses the relevant facts, and finally addresses the specific claims of ineffective assistance of counsel.

### A.

At the time of the 1993 trial in this case, it was well established Eleventh Circuit law that drug type and quantity were matters for the sentencing court, not the jury. United States v. Cross, 916 F.2d 622, 623-24 (11th Cir. 1990), cert. denied, 499

U.S. 929 (1991); <u>United States v. Perez</u>, 960 F.2d 1569, 1574-76 (11th Cir. 1992), <u>cert. denied</u>, 507 U.S. 975 (1993).  <u>See also</u> <u>United States v. Sanchez</u>, 269 F.3d 1250, 1266-67 (11th Cir. 2001)(en banc)(collecting cases), <u>abrogated in part</u>, <u>United States v. Duncan</u>, 400 F.3d 1297, 1308 (11th Cir. 2005).  As <u>Perez</u> stated, this was a change from the prior circuit rule in <u>United States v. Alvarez</u>, 735 F.2d 461, 468 (11th Cir. 1984), which had held that for a drug enhancement to apply to the sentence, drug quantity had to be alleged in the indictment and decided by the jury.  The <u>Perez</u> court decided that the intervening decision in <u>Cross</u>, which was premised upon <u>McMillian v. Pennsylvania</u>, 477 U.S. 79 (1986), meant that the quantity of drugs need not be alleged in the indictment if defendant was otherwise on notice that enhanced penalties were available.

The same was true with regards to the type of drug.  Eleventh Circuit law was well settled that the government had to prove that the substance was a "controlled substance" within the meaning of the statute, but did not have to prove the type of substance to the jury.  Like quantity, the type of substance was a sentencing matter for the judge to determine.  <u>United States v. Williams</u>, 876 F.2d 1521, 1525 (11th Cir. 1989)("A violation of section 841(a) occurs when the government proves beyond a reasonable doubt that a defendant possessed and intended to distribute a 'controlled substance,' regardless of whether that substance is cocaine or cocaine base."); <u>United States v. Gomez</u>, 905 F.2d 1513, 1514 (11th

Cir. 1990)(government need only prove that defendant knew he possessed a controlled substance, not that he knew the particular drug involved), <u>cert. denied</u>, 498 U.S. 1092 (1991); <u>United States v. Rutherford</u>, 175 F.3d 899, 906 (11th Cir. 1999)("The nature of the controlled substance neither constitutes an element of the offense nor broadens the bases of conviction, but is relevant only for sentencing purposes." Therefore, no error occurred where the indictment charged cocaine and evidence and jury instructions referred to cocaine base). Similarly, <u>Edwards v. United States</u>, 523 U.S. 511, 513-14 (1998) stated that the judge "determine[s] both the amount and the kind of controlled substance for which a defendant should be held accountable - - and then imposes a sentence that varies depending upon the amount and kind."

It was also clear that an indictment could properly charge a single conspiracy with multiple objects, and that a general verdict may be sufficient. "[W]hen a jury returns a [general] guilty verdict on an indictment charging several acts in the conjunctive, ..., the verdict stands if the evidence is sufficient with respect to any one of the acts charged." <u>Turner v. United States</u>, 396 U.S. 398, 420 (1970). Thus <u>Griffin v. United States</u>, 502 U.S. 46 (1991) held that a general guilty verdict on a multiple-object conspiracy charge was valid if the evidence was adequate to support a conviction as to one of the objects.

The multiple-object conspiracy did create other concerns. Historically, the use of a special verdict in a criminal case has

been disfavored.   United States v. Dennis, 786 F.2d 1029, 1041
(11th Cir.), cert. denied, 481 U.S. 1037 (1986).  However, the law
at the time of the 1993 trial clearly permitted a special verdict
in a case such as this.  "Where a section 846 conspiracy count
charges the defendants with conspiring to distribute two or more
drugs for which Congress has prescribed different ranges within
which the sentence imposed may fall, the trial judge should, by use
of a special interrogatory or otherwise, require the jury to return
a verdict on the conspiracy count that will indicate clearly on its
face which of the charged drugs the defendants were found by the
jury to have conspired to distribute."  Dennis, 786 F.2d at 1038.
The failure to use a special verdict is reversible error only if
defendant showed both a dual-object conspiracy and that the
evidence would support only a conviction under the controlled
substance with the lower statutory maximum sentence.  Dennis, 786
F.2d at 1039.

     After the trial in this case, Edwards in *dicta* stated that
defendants could prevail on their statutory and constitutional
claims of a need for a special verdict in two circumstances: (1) if
the sentences imposed exceeded the maximum that the statutes
permitted for a cocaine-only conspiracy, or (2) if defendants
cocaine base-related activities did not constitute part of the same
course of conduct or common scheme or plan.  Edwards, 523 U.S. at
515.  It was not until August 22, 2002, that the Eleventh Circuit
held, as a matter of first impression, that failure to use a

special verdict form in such circumstances was error.  United States v. Allen, 302 F.3d 1260 (11th Cir. 2002).  This does not, however, necessarily result in constitutionally ineffective assistance of counsel.  Black v. United States, 373 F.3d 1140 (11th Cir. 2004), cert. denied, 125 S.Ct. 942 (2005).

Even a valid general verdict could create an issue as to the selection of the appropriate Sentencing Guideline in a multiple-object conspiracy.  At the time of sentencing in this case, the Sentencing Guidelines provided: "A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit."  U.S.S.G. § 1B1.2(d) (1993).  The Commentary provided: "Particular care must be taken in applying subsection (d) because there are cases in which the jury's verdict does not establish which offense(s) was the object of the conspiracy.  In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense."  Id. comment. (n.5).  The court's findings must be made pursuant to a reasonable doubt standard: "the court must find beyond a reasonable doubt that the defendant conspired to commit the particular object offense" before the offense can be the basis for a defendant's sentence.  United States v. McKinley, 995 F.2d 1020, 1026 (11th Cir. 1993), cert. denied, 511 U.S. 1021, 1036

-11-

(1994).  Section 1B1.2(d) and Application Note 5 comply with the requirements of the Fifth or Sixth Amendments.  United States v. Ross, 131 F.3d 970, 993-94 (11th Cir. 1997), cert. denied, 525 U.S. 913 (1998).

An exception to this procedure applied for offenses that would be grouped under the Sentencing Guidelines.  "Note, however, if the object offenses specified in the conspiracy count would be grouped together under § 3D1.2(d) (e.g., a conspiracy to steal three government checks) it is not necessary to engage in the foregoing analysis, because § 1B1.3(a)(2) governs consideration of the defendant's conduct."  U.S.S.G. § 1B1.2(d), comment. (n.5) (1993).  Since the drug offenses were grouped pursuant to § 3D1.2(d), this exception applied to the sentencings of Agent and Rice.

**B.**

This case proceeded in the normal fashion for cases of that time period.  The one count Indictment charged both petitioners with conspiracy to possess with intent to distribute unspecified amounts of both cocaine base and cocaine.  Thus, the Indictment identified the types of controlled substances, but not the quantities.  As noted above, the law at the time of the Indictment did not require either to be specifically alleged.

The maximum sentence for an unspecified amount of cocaine and for an unspecified amount of cocaine base was the same, twenty years (240 months) imprisonment.  21 U.S.C. § 841(b)(1)(C).  The sentences could be enhanced, however, based upon the type and

quantity of the controlled substance.  If the conspiracy involved five kilograms or more of cocaine and/or 50 grams or more of cocaine base, the maximum penalty was a mandatory ten years to life imprisonment.  21 U.S.C. § 841(b)(1)(A)(ii)(II) and (iii).  Under the law at the time, as discussed previously, whether an enhancement applied would be determined by the judge at sentencing.

The government consistently took the position in the trial court that, based upon the quantities of controlled substances involved in the conspiracy, the maximum penalty was a mandatory ten years to life imprisonment, and placed defendants on notice of that penalty from the beginning of the case.  Thus, the magistrate judge noted in detention orders for Agent (Doc. #85) and Rice (Doc. #101) that the government asserted that because the conspiracy involved massive amounts of controlled substances the defendants were looking at imprisonment in excess of ten years.  The government asserted that at least 15 kilograms of cocaine base were manufactured and distributed by the conspirators.  (Doc. #214). Because of Rice's criminal history, the government asserted that he was facing a mandatory twenty years to life imprisonment, with a Sentencing Guidelines range of 360 months to life imprisonment (Doc. #214; 384).  A Notice to Court (Doc. #305)  and all the Plea Agreements entered by co-defendants listed the maximum penalty as a mandatory ten years to life imprisonment.  (Docs. # 263, 276, 288, 291, 310).

-13-

As the Eleventh Circuit stated on direct appeal, the evidence at trial supported quantities of cocaine base far in excess of the 50 grams and quantities of cocaine for in excess of the 5 kilograms necessary for the enhanced sentence. The Court finds, upon a review of the trial record, that the evidence overwhelmingly established that the conspiracy involved at least 15 kilograms of cocaine base and at least 15 kilograms of cocaine. The Court also finds that the evidence overwhelming established that Agent and Rice were each criminally liable for at least 15 kilograms of cocaine base and at least 15 kilograms of cocaine.

During trial, all defendants, their counsel, and the government stipulated that various substances seized by law enforcement officers were either cocaine base or cocaine. The defendants stipulated to a total of 1,006.5 grams of cocaine base and 482.9 grams of cocaine. (Doc. #519, pp. 1445-47). Both Agent and Rice made Rule 29 motions at the conclusion of the government's case, which were denied by the trial judge. (Doc. #519, pp. 1474-80). Rice's counsel argued that there was no evidence as to powder cocaine as to Rice, but the trial judge stated: "The charge is conspiracy to possess with intent to distribute crack cocaine and cocaine. That is the conspiracy that is charged in the indictment. And I believe there is more than sufficient evidence to go to the jury on the issue as to Ira Rice . . ." (Doc. #519, pp. 1479-80). Consistent with the then-existing Eleventh Circuit precedent and their theory of the case, defense counsel did not request a jury

-14-

instruction specifically directing that the jury determine the type of controlled substance beyond a reasonable doubt, and no such instruction was given.   Rather, as discussed below, the jury instructions told the jury it must find both cocaine base and cocaine to convict defendants.

The government's closing argument began by telling the jury that the charged conspiracy was to possess with intent to distribute both powder cocaine and crack cocaine.   (Doc. #745, p. 27).   The government then described the powder cocaine and crack cocaine activities of the various defendants, and concluded: "Each and every one of them was aware, powder and crack, powder and crack.   And each and every one of these men did the best they could to get that powder and crack onto the streets of Fort Myers.   Each is responsible.   Each agreed and each participated in this illegal activity."   (Doc. #745, p. 44).

Counsel for Agent began his closing argument by stating that a conspiracy did exist, and it was between the government witnesses who had pled guilty and were now trying to bring others into it for their own benefit from the government.   (Doc. #745, p. 45).   Counsel argued that Agent was not involved in a drug conspiracy with anyone, and that his only reason for being on trial was that he was a well-known person in the Dunbar community where all the witnesses lived.   (Doc. #745, pp. 46-47, 49-50).   Counsel pointed out they had stipulated to  the drugs which were admitted in evidence: "we agreed that what has been tested here is crack

-15-

cocaine.  It's cocaine powder.  We have no question about that.  My client isn't disputing the fact that that's what it is.  What we dispute is the fact that that has anything to do with our client - - my client, George Agent."  (Doc. #745, p. 48).  Counsel argued that the conspiracy was to get Agent and other defendants so those persons truly guilty can go free or have shorter sentences.  (Doc. #745, p. 51).

Counsel for Rice began his closing argument with the verdict form, which he described as a book which contains all the evidence that the prosecutor presented against Rice.  (Doc. #745, p. 87).  Counsel stated that the book had five chapters, and proceeding to discuss the lack of evidence against Rice.  (Doc. #745, pp. 87-99).  Referring to the evidence, counsel stated that there was no evidence that the drugs admitted into evidence had anything to do with Rice, and that mere presence was not sufficient.  (Doc. #745, p. 88).  Counsel conceded the existence of the _Brandt_ Rice conspiracy in which powder cocaine was purchased in Miami, returned to Fort Myers, and distributed for Brandt Rice, but argued that _Ira_ Rice had nothing to do with it and that no physical evidence related to Ira Rice.  (Doc. #745, pp. 89-90).  Continuing the common defense theme, counsel argued that the government witnesses were the ones who profited and benefitted from the conspiracy and continued to profit as witnesses.  (Doc. #745, pp. 97-98).  Counsel ended his closing argument by returning to the verdict form as a

book, and requested that the jury sign the form and return a not guilty verdict as to Rice.  (Doc. #745, pp. 99-100).

During the continuation of the jury instruction charge conference after closing arguments but before instructions, the prosecutor suggested that in light of the closing arguments defense counsel may want a special verdict relating to each object of the conspiracy.  (Doc. #745, p. 216).  The trial judge declined to use a special verdict because the language in the Indictment was in the conjunctive, charging cocaine base <u>and</u> cocaine, and either it was that conspiracy or it wasn't that conspiracy.  Defense counsel had not requested such an instruction, and the trial court found it not to be appropriate.  (Doc. #745, pp. 216-17).

The instructions stated that the one count indictment "charges the defendants with conspiring to possess with intent to distribute crack cocaine <u>and</u> to possess with intent to distribute cocaine in violation of Title 21, United States Code, Section 846 and 841." (Docs. #336, p. 9; #756, p. 9, emphasis added).  The instructions further told the jury that an element of the offense was that "two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, <u>as charged in the indictment</u>."  (<u>Id</u>. at 10, emphasis added).  The Court also gave a multiple conspiracy instruction which stated that "the object of the conspiracy alleged in the indictment was to possess with intent to distribute controlled substance<u>s</u>."  (<u>Id</u>. at 13-14, emphasis added).

-17-

The Form of Verdict (Doc. #337) which was utilized provided: "We, the jury, unanimously find the defendant GEORGE AGENT ____ Guilty ____ Not Guilty" and "We, the jury, unanimously find the defendant IRA RICE ____ Guilty ____ Not Guilty." The jury checked the "Guilty" space for each petitioner.

Agent's Presentence Report found that Agent was responsible for the possession and distribution of at least 15 kilograms of cocaine base[3], and was a manager or supervisor of criminal activity which involved five or more participants. This resulted in a total offense level of 45, but the Total Offense Level under the Sentencing Guidelines was capped at level 43. The Presentence Report indicated that the statutory maximum sentence was a mandatory ten years to life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). Defense counsel filed objections arguing that the amount of drugs attributable to Agent was not supported by the evidence at trial. The sentencing judge, who had presided over the trial, overruled the objections and found Agent responsible for the fifteen kilograms of cocaine base as set forth in the Presentence Report (Doc. #556, pp. 4-5). The sentencing judge found Agent's total offense level was 43 and his criminal history category was V, which resulted in mandatory life imprisonment and five years supervised release. (Doc. #556, p. 5).

---

[3]Fifteen kilograms or more of cocaine base put defendant at Level 43, which was the top of the Drug Quantity Table. Therefore, the cocaine had no impact on the Sentencing Guidelines calculation. U.S.S.G, § 2D1.1 (1993).

-18-

Rice's Presentence Report found that the offense as to him involved in excess of three kilograms of cocaine base, and the base offense level and the total offense level were 38.[4]   The Presentence Report indicated that the statutory maximum sentence was a mandatory ten years to life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A).   Defense counsel had filed written objections to Rice's role in the offense and the amount of drugs attributable to Rice, arguing it was not supported by the evidence at trial (Doc. #421).   The sentencing judge overruled the objections and found Rice responsible for the three kilograms of cocaine base as set forth in the Presentence Report.  (Doc. #562, pp. 2-3).  The sentencing judge found Rice's total offense level was 38 and his criminal history category was VI, which resulted in a range of 360 months to life imprisonment, with ten years mandatory, and five years supervised release.  (Doc. #562, p. 6). The sentencing judge found that Rice's criminal history was overstated, reduced the criminal history category to V, and sentenced Rice to the low end of the resulting Sentencing Guidelines range (324 months).  (Doc. #562, pp. 8-9).

## C.

The Court concludes that neither Agent nor Rice were denied Fifth or Sixth Amendment rights by the district court's use of a general verdict or the jury instructions.  The jury was instructed

---

[4]The Presentence Report did not count any cocaine in calculating defendant's offense level.

that it must find beyond a reasonable doubt that both crack cocaine and cocaine were involved in the conspiracy in order to convict either defendant.   The general verdict in this case was not ambiguous, and clearly establishes that both petitioners were convicted of both cocaine base and cocaine.   Additionally, as discussed below, the use of a general verdict was consistent with the defense theory of the case.  Neither petitioner was sentence to a drug type not included in the indictment (both cocaine and cocaine base were specifically alleged), and both were proven to a jury beyond a reasonable doubt.  Even if not so, the overwhelming evidence of both types of substance results in no constitutional error.

The Court further finds that neither Agent's counsel nor Rice's counsel were ineffective for failing to request a special verdict about the type of drug.  Not only was each attorney acting consistently with Eleventh Circuit precedent at the time, but a special verdict would have detracted from the defense theory that their clients were not members of the conspiracy.  Having the jury focus on the distinction between powder cocaine and crack cocaine, when the defense was that the defendants were simply not involved in the conspiracy at all, would have been counterproductive and, given the evidence, futile.  Indeed, all defendants stipulated to the quantity and type of drugs seized by law enforcement officers because neither quantity nor type affected their theory of the case.

The Court also finds that neither Agents's nor Rice's counsel was ineffective for failing to object to a sentence based on the jury's general verdict.  Under the facts of this case, the general verdict clearly established that the jury had found each defendant guilty of both crack cocaine and powder cocaine beyond a reasonable doubt.  The overwhelming evidence established both substances. Additionally, the Eleventh Circuit precedent at the time was clear that the issues were sentencing matters for the judge, not the jury.  While the law has since changed, given the theory of the defense case there was neither deficient performance nor prejudice. Additionally, the Sentencing Guideline calculation was not impacted by any amount of cocaine base.

**D.**

In their May 5, 2005 supplemental memorandum, petitioners raise for the first time the claim that their appellate attorneys were ineffective for failing to raise the above issues on direct appeal.  This issue is untimely, and does not relate back to any issue raised in the § 2255 petitions.  Additionally, even if considered by the Court, the issue has no merit.  The same Strickland deficient performance and prejudice standards apply to appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Roe v. Flores-Ortega, 528 U.S. at 476-77.  If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal.  If the omitted claim would have had a reasonable probability of success on appeal, then the deficient

-21-

performance resulted in prejudice.  Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997).  Nonmeritorious claims which are not raised on direct appeal do not constitute ineffective assistance of counsel.  Diaz v. Secy Dept. Of Corr., 402 F.3d 1136, 1144-45 (11th Cir. 2005).  Here, there was not deficient performance for failing to raise the claims, and no prejudice resulted from the failure to raise such nonmeritorious claims.

Accordingly, it is now

**ORDERED**:

1.  Agent's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. #862) is **DENIED**.  The Clerk of the Court shall enter an amended judgment accordingly.

2.  Rice's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. #842) is **DENIED**.  The Clerk of the Court shall enter an amended judgment accordingly.

3.  The Clerk shall file a copy of this Order in Case No. 2:02-cv-628-FTM-29DNF, Case No. 2:02-cv-394-FTM-29DNF, and Case No. 2:93-cr-102-FTM-29, and close the civil files.

**DONE AND ORDERED** at Fort Myers, Florida, this __31st__ day of January, 2006.

JOHN E. STEELE
United States District Judge

-22-

Copies:
George Agent
Ira Rice
U.S. Attorney